<pre>
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - - - - X
3
    UNITED STATES OF AMERICA,      : 23-cr-00405-LDH
4                                  :
                                   :
5                                  :
         -against-                 : United States Courthouse
6                                  : Brooklyn, New York
                                   :
7                                  :
                                   : Tuesday, February 27, 2024
8   CHARLES LIMMER,                :
                                   :
9           Defendant.             :
                                   :
10  - - - - - - - - - - - - - - - - X

11           TRANSCRIPT OF CRIMINAL CAUSE FOR PLEA
           BEFORE THE HONORABLE VERA M. SCANLON
12              UNITED STATES MAGISTRATE JUDGE

13              A P P E A R A N C E S :

14  For the Government: BREON S. PEACE, ESQ.
                        United States Attorney
15                      Eastern District of New York
                        271 Cadman Plaza East
16                      Brooklyn, New York 11201
                    BY:  SEAN M. SHERMAN, ESQ.
17                       Assistant United States Attorney

18   For the Defendant:   THE LAW OFFICES OF RENEE M. WONG
                          401 Broadway
19                        Suite 306
                          New York, New York 10013
20                    BY: RENEE M. WONG, ESQ.

21

    Court Reporter:  Nicole J. Sesta, RMR, CRR, RPR
22                   Official Court Reporter
                     E-mail:  NSestaRMR@gmail.com
23

    Proceedings recorded by computerized stenography.  Transcript
24  produced by Computer-aided Transcription.

25
</pre>

1        THE COURTROOM DEPUTY:  Criminal cause for pleading

2   in United States of America versus Charles Limmer, docket

3   number 23-cr-405.

4        Counsel, please state your appearances, beginning

5   with the government.

6        MR. SHERMAN:  Good afternoon, Your Honor.

7        Sean Sherman, Assistant United States Attorney, on

8   behalf of the government.  With me at counsel table is Fish

9   and Wildlife Service Special Agent Lucia Ortiz.

10        THE COURT:  Good afternoon.

11        MS. WONG:  Good afternoon, Your Honor.

12        Appearing for defendant, Charles Limmer, Renee Wong.

13   Mr. Limmer is seated presently to my left.

14        THE COURT:  Okay.  I'm Judge Scanlon.  We're here

15   for a change of plea hearing.  Let me first make sure that

16   everyone has the same paperwork.  So I have a copy of the

17   indictment.

18        It was filed with the Court on October 10th of 2023.

19   I have a copy of the consent of plea taken before a magistrate

20   judge.  We'll go over that in a few minutes.  I have the

21   elements sheet that was provided by the government.

22        It doesn't have a date on it, but that was provided.

23   I have a copy of the plea agreement, which I've marked as

24   Court Exhibit 1.

25        (Court's Exhibit 1 was received in evidence.)

1        So both sides, do you have a copy of the same

2   paperwork?

3              MR. SHERMAN:  Yes, Your Honor.

4              MS. WONG:  Yes, Your Honor.

5              THE COURT:  You can stay seated, unless there is

6   something in particular that I ask you to stand for.

7              MS. WONG:  Thank you.

8              THE COURT:  So let me start with questions for the

9   government.  Are there any victims of the offenses, and if so

10  has the government notified them of today's hearing and their

11  right to attend and be heard?

12             MR. SHERMAN:  Your Honor, this is not a victim case.

13             THE COURT:  Okay.  So Mr. Limmer, there is a lot of

14  stages of today's proceeding.  I'm going to be providing you

15  with some information, and I'll also be asking you some

16  questions before we get to the change of plea.

17        So what is proposed that you're going to do here

18  today, which is to plead guilty two one of the counts in the

19  indictment, is a serious decision.  So my role here is to make

20  sure you understand all of your rights and the consequences of

21  your plea.

22        As we go along, I'm going to have to ask you some

23  questions, and that's going to require that your answers be

24  made under oath.  So going to first check in with my law clerk

25  and ask do you have the oath.

1          THE LAW CLERK:  Yes, Your Honor.

2          THE COURT:  She is going to administer an oath to

3     you.  You can stand up.  Are you okay standing?

4          THE DEFENDANT:  I'm okay.

5          THE LAW CLERK:  Please raise your right hand, Mr.

6     Limmer.

7          (Defendant sworn.)

8          THE LAW CLERK:  Please your name for the record.

9          THE DEFENDANT:  Charles Mark Limmer.

10         THE COURT:  Thank you.  You can have a seat.  Are

11    you okay?

12         THE DEFENDANT:  Yes, I'm okay.

13         THE COURT:  You can put your hand down.  There is

14    two microphones on that table.  Why don't we pull one in front

15    of you and one in front of your lawyer.

16         So as we go along today, if you have any trouble

17    hearing me, let me know.  All right?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you understand that having just

20    agreed to that oath your answers to my questions are now

21    subject to the penalty of perjury, or making a false

22    statement, if you don't give me a truthful answer to my

23    questions?

24         THE DEFENDANT:  Understood.

25         THE COURT:  So if you answer any of my questions

1  falsely today, the government might decide to prosecute you

2  for perjury, or making up -- for the crime of perjury or

3  making a false statement.  They could use any of your false

4  statements today during that prosecution.

5          Do you understand?

6          THE DEFENDANT:  Yes.

7          THE COURT:  So I just want to confirm, this case is

8  assigned to a district judge, Judge DeArcy Hall.  She's the

9  judge who will make the ultimate decision as to whether to

10 accept your plea, and if she does, to give you your sentence.

11         Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  You have the absolute right to have

14 change of plea before Judge DeArcy Hall instead of before me

15 and there won't be any prejudice to you.

16         THE DEFENDANT:  What does the change of plea mean?

17         MS. WONG:  Taking the plea.

18         THE COURT:  Let me just remind you.  You have your

19 attorney here.  If you want to have a conversation with your

20 attorney, that's fine.  It might be helpful if you let me know

21 if you're going to have a conversation, or at least turn off

22 the microphones because I can hear what you're saying if the

23 microphones are on.

24         So a change of plea is when this case got moving and

25 that indictment, one of the documents I mentioned, was issued

1   and the case started in that way against you with the

2   indictment, then you entered a plea of not guilty.

3           So when I say a change of plea, what has been

4   suggested to me is that after you get all the information that

5   you need and have time to think about it, that you may want to

6   plead guilty to at least one of the offenses in the

7   indictment.

8           THE DEFENDANT:  I understand.

9           THE COURT:  So just to go back to the district

10  judge.  You can have the proceeding before Judge DeArcy Hall

11  or you can do it before me, if you would like.

12          So as you can see, we have a court reporter here.

13  She's taking down everything that everyone is saying.  At the

14  end of the proceeding, she'll prepare a transcript and that

15  transcript will be provided to the district judge, and then

16  the judge will read it and make a decision as to whether to

17  accept your plea.  If she does, then she'll decide how to

18  sentence you.

19          Okay?

20          THE DEFENDANT:  Yes.

21          THE COURT:  As we go along, if I ask you questions,

22  if you're going to give me an answer, you need to say the

23  answer out loud because the court reporter is typing it all.

24          Your client doesn't look so great.  This is the

25  first time I've met him.  Is he feeling okay?

1          MS. WONG:  Your Honor, he has a number of medical

2     conditions, including generalized anxiety disorder.  This is

3     very stressful for him.  I've spent hours preparing him for

4     this, and I do believe that he is prepared to go forward.

5          THE COURT:  So Mr. Limmer, if you need to take a

6     break, we can do that.

7          THE DEFENDANT:  No.  I want to get this finished.

8          THE COURT:  Okay.  My job here is to provide you

9     with the information and to take your responses to my

10    questions and your lawyer's responses to my questions, but we

11    just picked a day.  If we need to pick it up, the conversation

12    with the government about whether continuing it another day is

13    what you want to do.

14         Okay.  Back to Judge DeArcy Hall.  Two judges, I'm

15    helping her with this case.  You have the option of having me

16    listen to the change of plea.  So do you want to go ahead with

17    this change of plea before me and give up your right to do it

18    before the other judge?

19         THE DEFENDANT:  You're fine, Your Honor.

20         THE COURT:  Are you deciding to that voluntarily and

21    of your own free will?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Has anyone made any threats or promises

24    to you to get you to agree to proceed before me?

25         THE DEFENDANT:  No.

1          THE COURT:  I'm holding up this form.  This is one

2     of the ones I mentioned that has consent of a plea taken

3     before me.  Did you read this form?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand it?

6          We can show it to you.  I'm going to ask my law

7     clerk to show it to you.

8          THE DEFENDANT:  Okay.

9          THE COURT:  You read that form?

10         THE DEFENDANT:  Yes, I just read that before.

11         THE COURT:  Do you understand it?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Did you have enough time to go over it

14    with your lawyer?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And let me just get the original form

17    back.  And for your lawyer, did you sign the form?

18         MS. WONG:  Yes, I did, Your Honor.

19         THE COURT:  And for the government, did you sign the

20    form?

21         MR. SHERMAN:  Yes, Your Honor.

22         THE COURT:  Based on what has been said by the

23    lawyers and Mr. Limmer, I believe he understands his right to

24    proceed before a district judge and he's waiving that right.

25    So I also am going to sign the form.  We'll file that on the

1    court's docket.

2          Mr. Limmer, I'm going to ask you some background

3    questions.  I'm going to start with the basics.  What is your

4    full name?

5          THE DEFENDANT:  Charles Mark Limmer.

6          THE COURT:  How old are you?

7          THE DEFENDANT:  76.

8          THE COURT:  What is your highest level of education?

9          THE DEFENDANT:  I was in a master's program, two.

10   So I went through a bachelor's and a bachelor's, and I have 46

11   and a half master's credits.

12         THE COURT:  Where were you studying?

13         THE DEFENDANT:  Cortland State University.

14         THE COURT:  What were you studying, what field?

15         THE DEFENDANT:  I studied biological sciences and

16   species, speciation and species diversity.

17         THE COURT:  Let me ask a different kind of

18   background question.  Your lawyer already touched on this.

19   Are you suffering from any mental or physical illnesses?

20         THE DEFENDANT:  I have a long list of medical

21   problems.

22         THE COURT:  Your lawyer has some paperwork.  I need

23   to ask you about them.  If you agree the paper is right, maybe

24   your lawyer can read them into the record and I'll ask follow

25   up.

1          Does that work?

2          THE DEFENDANT:  I didn't understand.

3          MS. WONG:  Is it okay if I ask the questions about

4    the paperwork?

5          THE DEFENDANT:  Yes.

6          THE COURT:  I need to know that you're in good

7    enough mental and physical health to go ahead with this,

8    because it's a big decision.  So I need to know what your

9    medical conditions are.

10         THE DEFENDANT:  Yes, I'm okay today.  I'm having a

11   good day because the temperature is good.

12         THE COURT:  Let me ask your attorney to read the

13   list of your medical conditions, and if there's anything --

14         MS. WONG:  Your Honor, I don't have the medical

15   conditions.  I have the names of six different treating

16   physicians.

17         He is being treated for his cardiology,

18   endocrinology, ophthalmology.

19         THE COURT:  What was the third one?

20         MS. WONG:  Ophthalmology.

21         THE COURT:  Eyes?

22         MS. WONG:  Eyes.  Rheumatology.  He does have

23   diabetes, which is being monitored, and he has, as we

24   discussed, generalized anxiety disorder.  I have a list of 16

25   medications that he's taking, prescribed medications, under

1  the care of his doctors, which I can read into the record, if

2  you would like.

3            THE COURT:  Yes.

4            MS. WONG:  Number one is insulin, NovoLog insulin.

5  Number two is Lantus insulin.  Number three is Metoprolol.

6  Number four is Ramipril.  Five is Fenofibrate.  Six is

7  Tamsulosin.

8            Seven is Diazepam.  Eight is Atorvastatin.  Nine is

9  Pennsaid topical ointment.  Eleven is Albuterol.  Twelve is

10  Flovent.  Fourteen is Hydrocodone-Acetaminophen.

11            Fifteen is Presolol, as well as a daily

12  multi-vitamin.  I don't believe I mentioned previously that he

13  also has COPD and asthma.

14            THE DEFENDANT:  For which I take Symbicort.  It's

15  not down there.  Symbicort is like Flovent.  They're steroidal

16  inhalers.

17            THE COURT:  Okay.

18            MS. WONG:  Also Xanax, which is prescribed for his

19  anxiety disorder.

20            THE COURT:  Okay.  Let's talk about the conditions.

21  Do any of your medical conditions, meaning do any of your

22  physical conditions, would they interfere with your ability to

23  understand today's proceedings?

24            THE DEFENDANT:  No.  I am not cognitively impaired.

25            THE COURT:  Do any of the mental health conditions

1   that you have, would they interfere with your ability to
2   understand these proceedings?
3               THE DEFENDANT:  I understand verbally everything you
4   say to me.  I understand exactly what you're saying.
5               THE COURT:  Do you understand your interactions with
6   your attorney?
7               THE DEFENDANT:  Absolutely.  She puts me at ease.
8               THE COURT:  That's good.
9               You listed a series of medicines, and we added
10  Xanax.  Was it Xanax?  Wrong medicine.  What was it?  Somebody
11  in the background.
12              MS. WONG:  I'm sorry.  Valium.
13              THE COURT:  Valium.  So let me restate the question.
14  Your lawyer listed a series of medicines, and also added
15  Valium to that.
16              Is anything about any of these medicines that would
17  interfere with your ability to understand today's proceedings?
18              THE DEFENDANT:  Not that I know of.
19              THE COURT:  Are you current on taking the prescribed
20  medicines, meaning if you were supposed to have taken a dose
21  today, did you take the dose today; if you were supposed to
22  have taken it yesterday but not today, did you take it
23  yesterday?
24              THE DEFENDANT:  My wife was a nurse for 40 years.
25  She's on top of it every minute of the day.

1          THE COURT:  Is that the person in the back who

2     corrected the name of the medicine?

3          THE DEFENDANT:  That's Susan Limmer, yes.

4          THE COURT:  With your wife's help, are you current

5     with all of the medicines that you need to take?

6          THE DEFENDANT:  Yes.  Now, when it comes to insulin,

7     I'm an uncontrolled diabetic.  So right now, for instance, I

8     am having a small problem but it doesn't affect me mentally.

9          THE COURT:  We don't want anything to affect you

10    physically.  Do you need sugar?  Do you need insulin?

11         THE DEFENDANT:  I take candy when I'm dropping too

12    fast.  I take insulin.  I'm good to go, and if I'm not I will

13    inject some insulin.

14         THE COURT:  Okay.  So you should let us know if you

15    need anything.  If your concentration waivers, or if there's

16    any problem both for your health and for your ability to

17    understand these proceedings.  Okay?

18         THE DEFENDANT:  I appreciate your concern and I

19    thank you.

20         THE COURT:  Do you have any untreated medical

21    conditions, obviously, that you know of?

22         THE DEFENDANT:  I have stress induced anxiety, which

23    is exacerbated by the temperature outside.  It puts me into an

24    asthmatic fit.  So sometimes I might pass out, but only if I'm

25    cold.

1      THE COURT:  Okay.  So you're doing okay right now?

2      THE DEFENDANT:  Yes.  Today is a good day.

3      THE COURT:  Besides the stress anxiety interaction

4  with the asthma, do you have any other medical conditions that

5  we haven't touched on?

6      THE DEFENDANT:  You mentioned I have osteoarthritis.

7  My bones are growing through my skin.  If you want to take a

8  look, you haven't seen any of these.

9      THE COURT:  Your hands are a bit stiff as you hold

10 them up there.

11     Do you take any treatment for the osteoarthritis?

12     THE DEFENDANT:  Yes.  I get injections of steroids

13 from Dr. Khan and it's a long Indian name.

14     THE COURT:  Is osteoarthritis causing you pain right

15 now?

16     THE DEFENDANT:  Only in my left hand.

17     THE COURT:  Is it distracting you from focusing on

18 today's proceeding?

19     THE DEFENDANT:  No.

20     THE COURT:  Is there anything about the steroid

21 injections that would interfere with your ability to

22 understand today's proceeding?

23     THE DEFENDANT:  Not one bit.

24     THE COURT:  So we have the conditions and what

25 doctors are helping you with your conditions.  We have the

1   medicines, that we've discussed.  We have the osteoarthritis

2   and the anxiety stress that interacts with the asthma.

3          Do you have any other medical conditions, whether

4   it's physical or mental health related?

5          THE DEFENDANT:  No, I do not.  Overriding all that

6   is strictly the uncontrolled diabetes, which puts a limit on

7   my longevity.

8          THE COURT:  Sorry about that.  Hopefully you can

9   continue to work on it.  I can tell some of these medicines

10  are related to diabetes on the list you read.

11         I already asked you, were you up-to-date on what

12  you're supposed to be taking in terms of the prescription

13  medicine.

14         THE DEFENDANT:  Absolutely.

15         THE COURT:  Have you taken any other medicine or

16  drugs in the last 24 hours?

17         THE DEFENDANT:  Not in the last 24 years.

18         THE COURT:  That's helpful.

19         How about any alcohol in the last 24 hours?

20         THE DEFENDANT:  That is a never.

21         THE COURT:  It's contraindicated for a lot of those

22  conditions that you mentioned.  Have you ever been

23  hospitalized or treated for a drug addiction or alcoholism?

24         THE DEFENDANT:  No.

25         THE COURT:  Have you ever been hospitalized for any

1  mental health issues?

2          THE DEFENDANT:  Not yet.

3          THE COURT:  Do you have any, in the course of this

4  case, did you have any difficulty communicating with your

5  attorney?

6          THE DEFENDANT:  Not at all.

7          THE COURT:  Is your mind clear as you sit here

8  today?

9          THE DEFENDANT:  I am as fit as I can be.

10          THE COURT:  If anything changes as we go along, for

11  whatever reason, including your sugar is going up and down,

12  let us know.  We'll let you take the opportunity to treat that

13  and see if we can continue either today or another day.

14          THE DEFENDANT:  Understood.

15          THE COURT:  You're checking your glucose monitor?

16          THE DEFENDANT:  Yes.

17          THE COURT:  I'm going to go over some questions

18  related to your right to have an attorney.  As a defendant in

19  a criminal case, you have the right to be represented by an

20  attorney at every stage of your criminal case, including at

21  today's proceeding.  If you can't afford an attorney, the

22  Court will appoint one to represent you.

23          Counsel, are you appointed or retained?

24          MS. WONG:  I am retained, Your Honor.

25          THE COURT:  Your attorney is sitting next to you.

1  If at any time you need to speak with her, let me know and

2  we'll let you do so.

3             Do you understand?

4             THE DEFENDANT:  Yes.

5             THE COURT:  And I already asked you but let me

6  confirm, you have no difficulty communicating with your

7  attorney; is that correct?

8             THE DEFENDANT:  That is correct.

9             THE COURT:  Have you had enough time to discuss your

10  case with your attorney, including the decision to enter a

11  guilty plea?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Are you fully satisfied with the

14  representation and advice that your attorney has provided for

15  you in this case?

16            THE DEFENDANT:  I think so, yes.

17            THE COURT:  You're happy with your lawyer's work?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Just a couple of questions for your

20  lawyer.  Counsel, have you discussed this case with your

21  client?

22            MS. WONG:  Yes, I have.

23            THE COURT:  Have you had any difficulty

24  communicating with him?

25            MS. WONG:  No, Your Honor.

1          THE COURT:  Are you satisfied that Mr. Limmer

2   understand the rights he'll be waiving if he decides to go

3   ahead with the guilty plea?

4          MS. WONG:  Yes, I do.

5          THE COURT:  In your opinion, is he capable of

6   understanding the nature of these proceedings?

7          MS. WONG:  Yes.

8          THE COURT:  Do you have any doubts as to his

9   competency?

10          MS. WONG:  No.

11          THE COURT:  Have you advised him of the operation of

12   the sentencing guidelines in this case?

13          MS. WONG:  Yes, I have.

14          THE COURT:  And have you advised him of the maximum

15   sentence and other possible sentencing consequences?

16          MS. WONG:  Yes, I have.

17          THE COURT:  So in this case, there's a document

18   called the indictment.  It sets forth a number of allegations

19   about violations of particular federal laws.

20          This indictment happens to have a good amount of

21   information at the front of it, but the counts in the

22   indictment are as follows:

23          Count 1 is conspiracy to smuggle goods into the

24   United States.  That charge lists overt acts that the

25   government alleges were associated with that conspiracy.

1     Count 2 is smuggling goods into the United States.

2     Count 3 is smuggling goods out of the United States.

3     Count 4, smuggling goods out of the United States.

4     Count 5, Lacey Act, false labeling.

5     Count 6, Lacey Act, trafficking.

6     And then, also, there are criminal forfeiture

7  allegations listed in the last couple pages of the indictment.

8  Counsel, do you want me to read the indictment aloud?

9     MS. WONG:  No, Your Honor.

10     THE COURT:  Mr. Limmer, do you understand the

11  charges against you?

12     THE DEFENDANT:  Yes.

13     THE COURT:  Have you discussed with your attorney

14  what it is that the government would have to prove in order

15  for you to be found guilty of each of these counts?

16     THE DEFENDANT:  Yes.

17     THE COURT:  Do you want me to explain a little bit

18  more what I'm asking, or do you understand the question?

19     THE DEFENDANT:  I understand the question.  That

20  doesn't mean that there are not extenuating circumstances.

21     THE COURT:  Hang on.  I'm going to interrupt because

22  there are several different stages of today's proceeding, and

23  right now we're at the part where I need to make sure you have

24  the background information for making your decision.

25     As we move towards the end of this, if you want to

1    go ahead with your decision to enter a plea, I'll ask you

2    questions about what happened and if you want to make a

3    statement after consulting with your attorney, you're free to

4    do that.

5              THE DEFENDANT:  Thank you.

6              THE COURT:  Let me just make sure the record is

7    clear.  Do you understand what it is the government would have

8    to prove in order for you to be found guilty of each of these

9    charges that I just read?

10             THE DEFENDANT:  Yes.

11             THE COURT:  So as I understand it, under the plea

12   agreement, what is proposed is that you're going to enter a

13   plea of guilty with regard to the first count of the

14   indictment, which is the conspiracy to smuggle goods into the

15   United States in violation of a particular federal law, which

16   is 18 United States Code, Section 371.

17             I'm going to ask the government to state the

18   elements of that particular offense.  So when I say elements,

19   this is what the government would have to prove in order for

20   you to be found guilty of this count.

21             MR. SHERMAN:  Your Honor, the elements of the

22   offense of conspiracy in violation of 18 U.S.C. 371 as

23   follows:  First, that two or more persons entered the unlawful

24   agreement charged in the indictment starting on or about the

25   date specified in the indictment.

1    Second, the defendant knowingly and willfully became

2  a member of the conspiracy; third, one of the members of the

3  conspiracy knowingly committed at least one of the overt acts

4  charged in the indictment; and fourth, the admitted overt act

5  or acts were committed to further some object of the

6  conspiracy.

7    THE COURT:  Just so everything is clear, you refer

8  to the overt acts, is it that you're referring to the overt

9  acts that begin in 18A and continue through 18E on pages six

10  and seven of the indictment?

11    MR. SHERMAN:  Yes, Your Honor.

12    THE COURT:  And the underlying offense, which is

13  smuggling goods into the United States, what are the elements

14  of that?

15    MR. SHERMAN:  The elements of the substantive

16  underlying crime of smuggling goods into the United States in

17  violation of 18 United States Code, Section 545 are as

18  follows:

19    First, that the defendant imported or brought into

20  the United States the merchandise in question; second, the

21  defendant did so contrary to law; and third, the defendant

22  knew the importation was contrary to law.

23    THE COURT:  And the law that's referred particularly

24  there is?

25    MR. SHERMAN:  Here, Your Honor, two of the relevant

1   laws are 50 CFR Section 14.61, which requires importers of

2   wildlife to file a signed and completed declaration; and 50

3   CFR Section 4.91, which require fish and wildlife permits to

4   import any wildlife for commercial purposes.

5            THE COURT:  Mr. Limmer, do you understand the

6   elements as just described by the government?

7            THE DEFENDANT:  Yes, I do.

8            THE COURT:  I'm going to ask counsel, do you believe

9   the government correctly stated the elements of the relevant

10  offense in the conspiracy to smuggle goods into the United

11  States?

12           MS. WONG:  Yes, I do.

13           THE COURT:  Now, I'm going to ask the government to

14  describe what evidence it would offer at trial in order to

15  prove that the defendant, in fact, committed the charge of

16  conspiracy to smuggle goods into the United States.

17           MR. SHERMAN:  Your Honor, if this case were to

18  proceed to trial, the government would prove its case through

19  witness testimony, including agent testimony, returns from

20  search warrants, including electronic search warrant returns,

21  including emails between the defendant and co-conspirators

22  reflecting the agreement to smuggle the products into the

23  United States, and to falsely label those products, as well as

24  additional documents relating to the defendant's prior

25  understanding of the requirements of fish and wildlife

1  services to have declarations and an import license, as well

2  as photographs related to surveillance.

3          THE COURT:  Did the government produce discovery to

4  defense counsel in this case?

5          MR. SHERMAN:  Yes, Your Honor.

6          THE COURT:  So for defense counsel, did you review

7  the discovery provided by the government?

8          MS. WONG:  Yes, Your Honor.

9          THE COURT:  Do you believe the government would be

10  able to establish the elements of the offense to which it

11  proposed your client is going to plead guilty based on the

12  evidence?

13          MS. WONG:  Yes, I do.

14          THE COURT:  Did you review that evidence with your

15  client?

16          MS. WONG:  Yes, I have.

17          THE COURT:  Do you believe Mr. Limmer understands

18  the application of the law, and the elements of the count of

19  conspiracy to smuggle goods into the United States to the

20  evidence described by the government?

21          MS. WONG:  Yes.

22          THE COURT:  Did you and your client have sufficient

23  opportunity to review the evidence?

24          MS. WONG:  Yes, Your Honor.

25          THE COURT:  Mr. Limmer, did you have a sufficient

1    opportunity to review the evidence provided by the government

2    to you and your attorney?

3              THE DEFENDANT:  Yes, on paper.  Yes.

4              THE COURT:  Do you understand the application of the

5    law of the elements of the conspiracy to smuggle goods into

6    the United States to the evidence and discovery provided by

7    the government?

8              THE DEFENDANT:  Yes.

9              THE COURT:  At this point I'm going to go over some

10   of your rights in this proceeding and rights that you would be

11   giving up if you decide to go ahead with the guilty plea.

12             You have the right to plead not guilty, as you have

13   already done, and you have the right to persist in that plea.

14   So even if you are guilty, you have a choice.  It's up to you

15   to decide what to do in this case.  It's not your lawyer's

16   decision or your family's decision.  It's just your decision.

17             You can withdraw your previously entered plea of not

18   guilty and plead guilty, as I'm told you want to do, or you

19   can choose to go to trial.  If you would like to go to trial,

20   you should persist in your plea of not guilty.

21             Do you understand that?

22             THE DEFENDANT:  I do.

23             THE COURT:  If you plead not guilty to the charges,

24   or you persist in your plea of not guilty, you would have the

25   right under the Constitution and laws of the United States to

1  a speedy and public trial before a jury with the assistance of

2  your lawyer on the charges that are contained in the

3  indictment.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  At any trial you would be presumed

7  innocent.  You wouldn't have to prove your innocence.  Under

8  the American legal system, the government has the burden of

9  proving beyond a reasonable doubt that a defendant is guilty

10  of the crime or crimes charged.  If at trial the government

11  failed to meet the burden of proof as to any count, the jury

12  would have the obligation to find you not guilty as to that

13  count.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Sometimes a jury can return a verdict of

17  not guilty even though the jurors believe the defendant

18  probably did commit the crimes that were charged.  When a jury

19  returns such a verdict, the jurors are not saying that they

20  believe the defendant to be innocent.  Instead, they are

21  simply not convinced beyond a reasonable doubt that the

22  defendant is guilty.

23          Do you understand that distinction?

24          THE DEFENDANT:  Now I do.

25          THE COURT:  If you were to go to trial in this case,

1  witnesses for the government would come to court and testify

2  in your presence.  Your lawyer would have the right to cross

3  examine in each witness, to object to the evidence offered by

4  the government, and to offer evidence on your own behalf.

5         Do you understand?

6         THE DEFENDANT:  I understand.

7         THE COURT:  You would have the right, or your lawyer

8  would help you with the right, to subpoena or compel witnesses

9  to come to court and testify.

10         Do you understand that right?

11         THE DEFENDANT:  Yes.

12         THE COURT:  At trial, you would have the right to

13  testify on your own behalf if you wanted to do so, but you

14  couldn't be forced to testify under the Constitution of the

15  United States; under the laws of the United States, no one can

16  be forced to testify against himself.

17         If you had a trial before the district judge, Judge

18  DeArcy Hall, and you decided not to testify, the judge would

19  instruct the jury that the jurors could not hold that fact

20  against you.

21         Do you understand that?

22         THE DEFENDANT:  I do understand that.

23         THE COURT:  If you decide that you're not going to

24  go to trial, and instead you're going to plead guilty to one

25  of the crimes charged in the indictment and the district judge

1  accepts your plea, you'll be giving up your constitutional

2  right to a trial and all the rights I just discussed.

3        Do you understand?

4        THE DEFENDANT:  Yes.  May I ask a question?

5        THE COURT:  My suggestion is first ask your lawyer

6  and see if you can figure it out, and then after that, you can

7  ask me.  It's up to you.

8        (Pause.)

9        THE DEFENDANT:  It's been clarified to me.

10        THE COURT:  Okay.  So if you go ahead with the

11  guilty plea there is not going to be a trial in your case.  If

12  the judge accepts your plea, she will enter a judgment of

13  guilty based upon your plea.

14        Do you understand that?

15        THE DEFENDANT:  Yes.

16        THE COURT:  If you decide you want to plead guilty,

17  I'm going to have to ask you questions about what you did in

18  order to satisfy myself and Judge DeArcy Hall that you are

19  guilty of the crime to which you plead guilty.

20        You'll have to answer my questions and acknowledge

21  your guilt.  In doing so, you'll be giving up your right not

22  to testify against yourself.

23        Do you understand that?

24        THE DEFENDANT:  Yes.

25        THE COURT:  If you enter a plea of guilty today and

1  you admit the conduct in the criminal charge to which you're

2  pleading guilty and the judge accepts your plea, you won't be

3  able to appeal the question to a higher court of whether you

4  committed the crime or not.

5        If you decide to plead guilty, then that question is

6  over and it's been answered in the affirmative by you.  Do you

7  understand?

8        THE DEFENDANT:  Yes, I do.

9        THE COURT:  Are you willing to give up your right to

10  a trial and all the other rights I just discussed?

11        THE DEFENDANT:  Yes, I am.

12        THE COURT:  In your case, I have a document called

13  the plea agreement.  I have put a sticker on it.  So it's

14  marked as Court Exhibit 1.  I may refer to them

15  interchangeably.  So I'm going to hold up the document, the

16  plea agreement.

17        Did you read this whole document?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Do you understand everything in it?

20        THE DEFENDANT:  Yes.

21        THE COURT:  I'm going to start by looking at the

22  last page, and then I'm going to go through some parts of the

23  agreement in detail.  In the middle of the last page, which is

24  page 10, it has the following statements:

25        I have read the entire agreement and discussed it

1   with my attorney.  I understand all of its terms and am

2   entering into it knowingly and voluntarily.

3           Are those two sentences correct statements?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Right below those statements on the copy

6   that I have, I'm holding it up, your name is printed.  There's

7   a signature.

8           Is that your signature?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Did you sign it?

11          THE DEFENDANT:  She has the signature?

12          MS. WONG:  Yes.

13          THE DEFENDANT:  Yes.

14          THE COURT:  I can show it to you.

15          THE DEFENDANT:  I believe you.  You're a judge.

16          THE COURT:  That is definitely not good enough.  I

17  need you to confirm that that's your signature, if it is, in

18  fact, your signature, about halfway down the page.

19          THE DEFENDANT:  Yes.

20          THE COURT:  Is that your signature?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Did you intend to sign the document and

23  to indicate that you're bound by the agreement?

24          THE DEFENDANT:  Yes.  Whatever my lawyer says I

25  trust.

1    THE COURT:  Let me tell you something about what

2  we're trying to do today.  In your criminal case it's

3  completely fine for a defendant to rely heavily on your

4  lawyer.  But this is a very, very key step in the case, and

5  your decision making needs to be completely independent,

6  knowing, and voluntarily.

7    You can make the decision in your head and in your

8  heart based on what your lawyer tells you, and you decide if

9  you trust what your lawyer says or not, but it can't keep

10  going with this if it's based on you just trusting her.  You

11  need to independently make the decisions that are key to

12  entering a plea.

13    There is nobody pressuring you to do it.  I'll ask

14  you if someone is pressuring you.  We don't have to keep

15  going.  It's totally up to you.  So let's go back to the --

16  first of all, do you understand what I just said?

17    THE DEFENDANT:  I do understand what you just said.

18    THE COURT:  In signing that agreement, you confirmed

19  that that was your signature.  Did you intend to be bound by

20  the entire agreement with the US government, which is in that

21  document, which is right in front of you?

22    THE DEFENDANT:  Yes.

23    THE COURT:  I'm going to ask you more questions

24  about it in a minute, but let me ask you about the signatures.

25  For your attorney, did you sign where it says approved by?

1          MS. WONG:  Yes, Your Honor.

2          THE COURT:  And to my law clerk, do you mind showing

3     the document to the government.  Who signed on behalf of the

4     government?

5          MR. SHERMAN:  Yes, Your Honor.  I signed, as well as

6     my supervisor, Jay Matthew Hagins.

7          THE COURT:  What was his role in this case?

8          MR. SHERMAN:  Supervisor.

9          THE COURT:  Does the government represent that Court

10    Exhibit 1, the plea agreement, contains the entirety of any

11    understanding that the United States Attorney's Office has

12    reached with Mr. Limmer?

13         MR. SHERMAN:  Yes.

14         THE COURT:  And for defense counsel, have you read

15    and reviewed the plea agreement, Court Exhibit 1, with Mr.

16    Limmer?

17         MS. WONG:  In its entirety, Your Honor.

18         THE COURT:  Does the plea agreement, Court

19    Exhibit 1, contain the entire agreement that your client has

20    entered into with the United States government?

21         MS. WONG:  Yes, Your Honor.

22         THE COURT:  For Mr. Limmer, did you discuss the plea

23    agreement with your attorney?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Did you have a sufficient opportunity do

1  so?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Do you understand everything in the plea

4  agreement?

5            THE DEFENDANT:  I do understand it.

6            THE COURT:  Other than the promises that are

7  contained in Court Exhibit 1, the plea agreement, has anyone

8  made any promises to you, any other promises to you that have

9  caused you to plead guilty?

10           THE DEFENDANT:  No.

11           THE COURT:  So there's no side agreement?  That's

12  what my question is asking.  Any side agreements?  Anyone else

13  make a promise?

14           THE DEFENDANT:  Yes.  I agree.

15           MS. WONG:  I'm sorry, Your Honor.  Can you repeat

16  the question?

17           THE COURT:  Other than the promises contained in the

18  written agreement, which has been marked as Court Exhibit 1,

19  this is the plea agreement, has anyone made any other promises

20  that have caused you to plead guilty?

21           THE DEFENDANT:  No.

22           THE COURT:  Has anyone threatened you to get you to

23  agree to this plea agreement?

24           THE DEFENDANT:  No.

25           THE COURT:  I'm going to go over some parts of the

1  plea agreement in detail, and I'm going to ask you a few more

2  general questions.

3              As you can see, what's outlined in paragraph 1 of

4  the plea agreement, Court Exhibit 1, is that you're going to

5  plead guilty to Count 1 of the indictment, which charges you

6  with a violation of 18 United States Code, Section 371.

7              As we talked about earlier, that is the first count

8  in the indictment, which is conspiracy to smuggle goods into

9  the United States.

10             The possible punishment associated with this count

11 are as follows.  They are outlined in the plea agreement.  The

12 maximum term of imprisonment is five years and the minimum

13 term of imprisonment is none.

14             Do you understand those provisions?

15             THE DEFENDANT:  Yes.

16             THE COURT:  In the federal system, there is no

17 parole.  So if you are sentenced to a term of imprisonment,

18 you should expect that you will serve all or almost all of

19 that term of imprisonment in custody.

20             Do you understand?

21             THE DEFENDANT:  Wow.  Yes.

22             THE COURT:  I say that because this is a serious

23 decision.  It's possible that the district judge, if she

24 accepts your plea and sentences you, will give you a term of

25 imprisonment.  Do you understand?

1           THE DEFENDANT:  Yes.

2           THE COURT:  There is also a condition called

3     supervised release.  So supervised release is essentially

4     probation.  If you are put on supervised release and the

5     maximum term of supervised release is three years, those three

6     years would follow any term of imprisonment.

7           If you were to violate a condition of release, you

8     could be sentenced for up to one year of imprisonment and that

9     would be without credit for pre-release imprisonment or time

10    previously served on post release supervision.

11          THE DEFENDANT:  That presupposes that I live for

12    three years.

13          THE COURT:  We're all hoping that, and that's down

14    the line.  Yes.  What I'm describing is basically what the

15    rules are for everyone who would take a plea to this count.

16    Just to be clear, this is what the judge has the authority to

17    do, and we're going to talk about the sentencing guidelines in

18    a minute and that's what the judge will take into account.

19          I can't tell you today what the sentence will be,

20    but it is possible it would include imprisonment and it's

21    possible it will include supervised release.

22          If you're on supervised release, you're subject to

23    restrictions on your liberty such as having to report to a

24    probation officer, how much you could travel could be limited,

25    other limitations.

1           Do you understand supervised release?

2           THE DEFENDANT:  I understand that.

3           THE COURT:  There is a maximum fine that can be

4    imposed.  That is the greater of $250,000 or twice the gross

5    gain or twice the gross loss.

6           Do you understand that term?

7           THE DEFENDANT:  I do understand it.

8           THE COURT:  You have to be charged a $100 special

9    assessment.  Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  And then other penalties are criminal

12   forfeiture.  In your plea agreement, that is described in

13   paragraphs 6 through 12.  And in yours, it lists both money

14   and many items.  And those are described particularly in

15   paragraph 6, which starts on page 5 and continues to page 7.

16           The criminal forfeiture, more generally, is

17   described in paragraphs 6 through 12.  So have you read those

18   paragraphs of the plea agreement?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Do you understand them?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Did you have sufficient opportunity to

23   review them with your attorney?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Let me ask your lawyer a question.  Is

1  there any concern about immigration consequences that I should

2  review them here on the record?

3             MS. WONG:  No, Your Honor.

4             THE COURT:  You waive that?

5             MS. WONG:  Yes.

6             THE COURT:  So I'm going to explain how the

7  sentencing process works.  I believe your lawyer has gone over

8  it with you before, but it's important so I want to make sure

9  you understand it.

10            So in terms of the sentencing process, as I

11 mentioned earlier, the judge who is going to make the

12 sentencing decision will review the transcript from today's

13 proceeding and decide whether she's going to accept your plea.

14            If she accepts your plea, she will go ahead with the

15 sentencing process.  The judge does not have complete

16 discretion to impose a sentence outside of the minimum and

17 maximum sentences set forth in the statute, and that we just

18 reviewed.  The maximum being five years and the minimum being

19 zero years.  Do you understand?

20            THE DEFENDANT:  Yes.

21            THE COURT:  The judge's process for deciding what

22 your sentence is going to be is a multistep process.  First,

23 she considers what are called the advisory sentencing

24 guidelines.  They have been prepared by a government group

25 called the United States Sentencing Commission.

1          They were written to help a judge decide what is a

2     reasonable sentence in a criminal case.  So these guidelines

3     are only advisory, but the judge will take them into account

4     in determining what sentence to give you.

5          Have you discussed the sentencing guidelines with

6     your attorney?

7               THE DEFENDANT:  Yes.

8               THE COURT:  The judge's second step is to consider

9     whether there are factors present that would allow the judge

10    to depart from the advisory sentencing guidelines.  Sometimes

11    a judge can depart upwardly and sometimes a judge can depart

12    downwardly.

13         Third, the judge will consider factors that are

14    included in a particular statute, which is called 18 United

15    States Code, Section 3553(a).  The Judge weighs the factors

16    against the facts and circumstances of your case.

17         After doing all of that analysis, the judge will

18    decide whether she's going to impose a guideline sentence or a

19    non-guideline sentence.  The bottom line is, though, until the

20    date of sentencing, you cannot know with certainty what the

21    sentencing guidelines will be for your case or whether the

22    judge will have grounds to depart from them, or whether the

23    judge will impose a guideline sentence or a non-guideline

24    sentence.

25         Do you understand?  You look a little surprised by

1    what I just said.

2            THE DEFENDANT:  I'm going to say I understand, but I

3    couldn't keep track of all of it.

4            THE COURT:  So let me just go back a little bit.  We

5    talked about what the possible penalties are, and then what I

6    was trying to tell you is that when the judge who is making

7    the decision about whether to sentence you, assuming she

8    accepts your plea for the moment and she's going to give you a

9    sentence, she has to consider a lot of information in making

10   her decision.

11           The first thing she considers are these advisory

12   sentencing guidelines.  Basically, I have them over here.

13   It's a very thick set of books that talks about all of the

14   federal crimes that there are, and provides information for

15   things the judge considers important, or not as important, and

16   how a judge might weigh them because the federal system covers

17   the entire United States and, basically, the sentencing

18   commission wants all the judges to have at least the same

19   starting point when thinking about a sentence.

20           So first, the judge will think about the sentencing

21   guidelines, and we're going to talk in a minute about what the

22   estimates are for your case.

23           But they won't be set until the date of sentencing.

24   And the next step is for the judge to consider if there is

25   anything about your case that would mean that she should go

1  higher than the sentencing guidelines or lower than the

2  sentencing guidelines.

3      After she's done all her work about the sentencing

4  guidelines, then she looks at a different law, that's a

5  particular statute.  The number of the statute is 18 United

6  States Code, Section 3553(a).  She thinks about the factors,

7  about your situation and what happened, and integrates her

8  work on the guidelines with her work about the 18 U.S.C.

9  Section 3553(a) factors.

10     So it's a lot of work and a lot of thinking about

11  the particulars of your case.  After she's done all of that,

12  she'll make a decision as to what your sentence will be.

13     Here we are in March, and let's see if we have a

14  sentencing date.  It's not for several months.  We'll get to

15  this.  The sentencing date is scheduled for October 4th of

16  2024.

17     So, basically, and I'll tell you a little bit more

18  about this, what happens between now and then is that the

19  probation office will prepare a report about you.  They'll

20  interview you.  They'll talk to people about the case.

21  They'll review all the paperwork, and after the probation

22  department makes a recommendation and gives their report to

23  the judge, you and your lawyer and the government's lawyer can

24  provide information to the judge.  And then there will be a

25  hearing and you can talk to the judge.  The government and

1   your lawyer can talk to the judge.  So after all of that

2   information is presented to the judge, she'll make a decision

3   about your sentence.

4          But for now, the main question is, do you understand

5   the process that the judge will go through to make a

6   sentencing decision?

7          THE DEFENDANT:  Now I do.

8          THE COURT:  Okay.  It also means that until you get

9   to the date of sentencing, which is currently scheduled for

10  October, you can't know, nobody here can know definitively

11  what the sentencing guidelines will be for your case, or what

12  the judge's decision will be.

13         Do you understand?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  Do you need to take a break?

16         THE DEFENDANT:  No.  I'm getting a second wind now.

17         THE COURT:  To go back to the sentencing guidelines,

18  as I said, right now we can only have an estimate because all

19  of the information about the relevant circumstances may not be

20  available.  There might be a mistake in the information

21  available, or information might change between now and the

22  time of sentencing.

23         But I'm going to ask the government to give its

24  current best estimate as to what the sentencing guidelines

25  will say about your case.

1      The government's position is outlined in

2  paragraph two of the plea agreement, but I'm going to ask them

3  to state it on the record.

4      MR. SHERMAN:  Yes, Your Honor.  Assuming the

5  defendant continues to accept responsibility through

6  sentencing, the government's best estimate is that the

7  defendant would be in an adjusted offense level of 13 and

8  Criminal History Category of I, which would carry a range of

9  imprisonment of 12 to 18 months imprisonment.

10      THE COURT:  Let me focus on one thing in that

11  paragraph, which is in, at least in the copy I have, it has a

12  date plea date of 12-15-2023.

13      Are you in agreement that should be updated?

14      MR. SHERMAN:  Your Honor, I apologize.  That is

15  correct.  The date is wrong.  I meant through the date of the

16  plea agreement.

17      THE COURT:  Let me ask my law clerk to give you a

18  copy of the plea agreement.  The date should be at least

19  today.  If you could update that and initial it.  Defense

20  counsel and the defendant should initial it.

21      So the date that was in paragraph two previously as

22  12-15-23 has been changed to 2-27-24, which is today.  So for

23  the government, did you initial this change and you agree with

24  it?

25      MR. SHERMAN:  Yes, Your Honor.

1        THE COURT:  And, defense counsel, did you initial

2   the change and do you agree with it?

3            MS. WONG:  Yes, Your Honor.

4            THE COURT:  And Mr. Limmer?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Let's get back to the main point.  In

7   sum, what is the government's estimate as to what the

8   sentencing guidelines will be and what range of imprisonment

9   does that carry?

10           MR. SHERMAN:  Yes, Your Honor.  The government's

11  estimate is that there would be an adjusted offense level of

12  13, which assuming the defendant is a Criminal History

13  Category I would be a range of imprisonment of 12 to

14  18 months.

15           THE COURT:  Mr. Limmer, do you understand the

16  government's estimate with regard to the sentencing

17  guidelines?

18           THE DEFENDANT:  I understood, but do not agree with

19  it.

20           THE COURT:  Let me ask your attorney, do you agree

21  -- do you agree the government -- let me ask a different

22  question.

23           What is your estimate as to the sentencing

24  guidelines?  But I will note the last sentence of

25  paragraph two says the defendant stipulates to the above

1   guidelines calculation.

2          MS. WONG:  Your Honor, defense counsel does agree to

3   stipulate to that guidelines calculation, and I believe the

4   defendant would also stipulate to that calculation but is,

5   perhaps, hoping for a different sentence.

6          THE COURT:  As we've talked about, there are lots of

7   factors for the judge to consider, the whole sentencing

8   guidelines process and the other statute the judge needs to

9   consider.

10         But this is where this is all going to start with

11  what appears to be a possible sentencing guidelines

12  calculation of a level that would lead to a term of

13  imprisonment of 12 to 18 months as the possible range of

14  imprisonment.

15         Let me ask Mr. Limmer.  Do you understand, first,

16  that this says that you stipulate to the above guidelines

17  calculation?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Do you understand what that means?

20         THE DEFENDANT:  Yeah.

21         THE COURT:  This estimate is not binding on the

22  government, probation department, or the Court.  And if the

23  estimate is wrong, that's not going to be a basis upon which

24  you can withdraw your plea of guilty.

25         Do you understand?

1     THE DEFENDANT:  I do understand.  I ain't going to

2  make it for 18 months anyway.

3     THE COURT:  Well, this whole system --

4     THE DEFENDANT:  Yes.

5     THE COURT:  -- is based on the understanding that

6  you're making a choice about your life, and that there are

7  consequences to those choices and everybody hopes that you

8  live with them and move beyond them.

9     THE DEFENDANT:  You're making a choice about my life

10  but fine, yes.

11     THE COURT:  Do you understand that the district

12  judge will sentence you according to her interpretations of

13  the sentencing guidelines and the applicable law?  Do you

14  understand that?

15     THE DEFENDANT:  Yes.

16     THE COURT:  Just to be sure, the judge has the

17  authority under the law to decide upon and impose a sentence

18  that is possibly more severe or possibly less severe than the

19  sentencing guidelines provide for.

20     Do you understand that?

21     THE DEFENDANT:  Yes.

22     THE COURT:  Included in this agreement in

23  paragraph four is a provision that is an appellate waiver.  So

24  it says that the defendant agrees not to file an appeal or

25  otherwise challenge by petition, pursuant to 28 United States

1    Code Section 2255, or any other provision of conviction or

2    sentence in the event that the Court imposes a term of

3    imprisonment of 21 months or below.

4              Do you understand that appellate waiver?

5              THE DEFENDANT:  I understand it.

6              THE COURT:  Are you in agreement with it?

7              THE DEFENDANT:  No.

8              THE COURT:  Well, it's a key part of this agreement.

9    Do you want to take a moment and discuss it with your

10   attorney?

11             THE DEFENDANT:  I'm going to add to whatever my

12   attorney tells me to answer.

13             THE COURT:  We can't do it that way.  You can

14   certainly take your attorney's advice.  I'm going to let you

15   have a private conversation.  Let me know when you're ready.

16             (Pause.)

17             MS. WONG:  Thank you, Your Honor.  We're ready to go

18   on the record.

19             THE COURT:  Mr. Limmer, did you have enough time to

20   speak to your attorney about whatever your concern is?

21             THE DEFENDANT:  Yes.

22             THE COURT:  So what we were talking about was the

23   appellate waiver, which says in sum that you're not going to

24   appeal directly or indirectly if the Court gives you a term of

25   imprisonment of 21 months or below.

1          Do you understand that appellate waiver?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you agree with it now after you had

4    the opportunity to speak with your attorney?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Did anyone force you to agree to that

7    appellate waiver?

8          THE DEFENDANT:  No.

9          THE COURT:  Let's just go back to the overall plea

10   agreement and make sure you are in agreement with it.  You

11   said earlier that you read the entire plea agreement; is that

12   correct?

13         THE DEFENDANT:  Yes.

14         THE COURT:  You understand everything in it?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Are you in agreement with what it says?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you want to go ahead with the guilty

19   plea subject to this plea agreement?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Are you doing so knowingly and

22   voluntarily?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Is there anything about your health,

25   either your mental health or your physical health, that would

1    interfere with your ability to understand the entire plea

2    agreement?

3              THE DEFENDANT:  No.

4              THE COURT:  Do you have any questions about anything

5    that we've covered that you want to raise with your attorney

6    or with me or have your attorney raise with me?

7              THE DEFENDANT:  No.

8              THE COURT:  Counsel, do you know of any reason why

9    your client should not plead guilty to the first count of the

10   indictment?

11             MS. WONG:  No, Your Honor.

12             THE COURT:  And, in your opinion, is it in Mr.

13   Limmer's best interest to proceed with the guilty plea?

14             MS. WONG:  Yes.

15             THE COURT:  And in your professional opinion, is it

16   in his best interest to proceed with the guilty plea subject

17   to the plea agreement, which is Court Exhibit 1?

18             MS. WONG:  Yes.

19             THE COURT:  Given that your client has many health

20   issues, do you believe he's in good enough mental and physical

21   health to go ahead with the guilty plea?

22             MS. WONG:  Yes.

23             THE COURT:  Before we go ahead with that, is there

24   anything the government wants to say?

25             MR. SHERMAN:  Not at this time, Your Honor.  I would

1 ask for just one moment to quickly confer with defense

2 counsel.

3          THE COURT:  Yes.  Let us know when you're ready.

4          (Pause.)

5          MR. SHERMAN:  We're ready, Your Honor.

6          THE COURT:  Mr. Limmer, at this point are you ready

7 to plead?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you need an opportunity speak with

10 your attorney before you do so?

11          THE DEFENDANT:  No.

12          THE COURT:  So what I understand -- let me ask you,

13 I'm going to ask you about the count and then I'm going to ask

14 you what it is that you did such that you are, in fact, guilty

15 of the count to which you are pleading guilty, and then I need

16 you to tell me what it is that you did in your own words.

17 Those are the next steps in this process.  Okay?

18          THE DEFENDANT:  Yes.

19          THE COURT:  So with regard to the first count of the

20 indictment, which is the count of conspiracy to smuggle goods

21 into the United States in violation of federal law,

22 specifically 18 United States Code Section 371, how do you

23 plead, guilty or not guilty?

24          THE DEFENDANT:  Guilty.

25          THE COURT:  Now, I have to ask you what is it that

1  you did such that you are, in fact, guilty of that count.

2  Tell me in your own words.

3          THE DEFENDANT:  I am guilty of importing butterfly

4  specimens after my license was rescinded.

5          MS. WONG:  Can you please read the statement?

6          THE DEFENDANT:  I should read this?

7          THE COURT:  Let me tell you a couple of things and

8  you can speak with your lawyer.  You remember earlier in this

9  proceeding we went over the elements, and the elements are

10  what the government would have to prove in order to show that

11  you're guilty of Count 1 of the indictment.

12          So if you were pleading guilty, you need to tell me

13  information, truthful information, that would show that you

14  satisfy the elements of the count.

15          THE DEFENDANT:  I feel confident that the government

16  can prove that I violated the law by importing butterfly

17  specimens without a proper import permit.

18          THE COURT:  You can consult with the paper, but I

19  need to hear in your own words a few more details, if you have

20  a full statement.  You can't directly read anything to me.

21  You have to tell me in your own words.  You can consult with

22  the paperwork.

23          One way we can do this is that you can question your

24  client as to the elements, and then depending on your answers

25  we'll see if there is complete allocution.  That might be an

1  easier way to do this, instead of trying to remember

2  everything that needs to be covered.

3      MS. WONG:  Would you like me to read an allocution?

4  Mr. Limmer, between October 2022 and September 2023, did you,

5  together with others, conspire to smuggle wildlife into the

6  United States, including protected species of Birdwing

7  butterflies by directing co-conspirators to falsely label

8  shipments of wildlife, which were being imported into the

9  United States?

10      THE DEFENDANT:  Yes.

11      MS. WONG:  Is it also true that at that time you

12  lacked a valid commercial importing wildlife license?

13      THE DEFENDANT:  That's correct.

14      MS. WONG:  Is it also correct that you did not file

15  the required wildlife importation declarations with fish and

16  wildlife services?

17      THE DEFENDANT:  Yes.

18      MS. WONG:  And were these shipments received in

19  Commack, New York?

20      THE DEFENDANT:  Yes.

21      MS. WONG:  Is that allocution sufficient?

22      THE COURT:  When did this happen, the dates again?

23      MS. WONG:  Between October 2022 and September 2023.

24      THE COURT:  Are those the correct dates?

25      MR. SHERMAN:  Yes, Your Honor.

1      THE COURT:  And for Mr. Limmer?

2      THE DEFENDANT:  Yes.

3      THE COURT:  Did you knowingly and willfully join in

4  the unlawful agreement with your co-conspirators?

5      THE DEFENDANT:  Yes, I did.

6      THE COURT:  And defense counsel, does your client

7  want to add anything to that?

8      MS. WONG:  No, Your Honor.

9      THE COURT:  Government, is that a satisfactory

10  allocution?

11      MR. SHERMAN:  Yes, Your Honor.

12      THE COURT:  Mr. Limmer, are you making this guilty

13  plea voluntarily and of your own free will?

14      THE DEFENDANT:  Yes, I am.

15      THE COURT:  Has anyone threatened or forced or

16  pressured you to plead guilty?

17      THE DEFENDANT:  No, ma'am.

18      THE COURT:  Other than the plea agreement, which is

19  Court Exhibit 1, has anyone made any promises to you that has

20  caused you to plead guilty?

21      THE DEFENDANT:  No, ma'am.

22      THE COURT:  Has anyone promised you or made you any

23  promises as to what sentence you would receive from the

24  district judge if you pled guilty?

25      THE DEFENDANT:  No, Your Honor.

1          THE COURT:  Are you feeling well enough to go ahead

2    with this plea?

3          THE DEFENDANT:  Yes, I am.

4          THE COURT:  I can tell, Mr. Limmer, you wanted to

5    say some things.  You are welcome to put them on the record.

6    I am not the judge who makes the decision to accept your plea

7    or your sentence.

8          So if you want them on the record now, you can make

9    those statements, but you can also save them for probation and

10   the judge who is doing the sentence, which is currently Judge

11   DeArcy Hall.

12         THE DEFENDANT:  So I should wait until I'm before

13   Judge DeArcy Hall before I make that statement?

14         THE COURT:  It's up to you, but she's the only one

15   who makes the sentencing decision.  If you say it now, she'll

16   just be reading it in the record as compared to reading it in

17   the record and hearing it from you.

18         THE DEFENDANT:  I will wait to make my statement to

19   her.

20         THE COURT:  Okay.  Based on information provided

21   here today by the U.S. Attorney's Office, by defense counsel,

22   and by Mr. Limmer, I believe Mr. Limmer is acting knowingly

23   and voluntarily, that he's in good enough health, both

24   mentally and physically to go ahead with this change of plea

25   hearing, that he fully understands the charges against him,

1 particularly the counts of conspiracy to smuggle goods into

2 the United States, Count 1 of the indictment, and he

3 understands his rights, the rights he'll be waiving by going

4 ahead with the plea, and he understands the consequences of

5 his plea.

6 I believe there is a factual basis for the plea and

7 his allocution that he just stated on the record. So,

8 therefore, I respectfully recommend to the district judge that

9 she accept Mr. Limmer's guilty plea to Count 1 of the

10 indictment, which is a count of conspiracy to smuggle goods

11 into the United States in violation of 18 United States Code

12 Section 371.

13 The sentencing date is currently scheduled for

14 October 4, 2024, at noon before Judge DeArcy Hall. If for any

15 reason that date needs to change, you need to contact Judge

16 DeArcy Hall's chambers.

17 As I mentioned earlier, there will be a report

18 prepared about you, Mr. Limmer, by the probation department.

19 So let me ask your attorney, would you like us to let

20 probation know that you would like to be part of the interview

21 process for preparing that document?

22 MS. WONG: Yes, please.

23 THE COURT: We'll do that. Obviously, Mr. Limmer is

24 not in custody. I assume that there's a bond; is that

25 correct?

1          MR. SHERMAN:  Yes, Your Honor.

2          THE COURT:  Is there any reason that any of the

3   conditions should change?

4          MR. SHERMAN:  No, Your Honor.

5          MS. WONG:  No, Your Honor.

6          THE COURT:  Okay.  We're going to give the original

7   plea agreement to the government to keep in its custody, given

8   that there's some changes and there's a signature.  I ask that

9   the government provide a copy to defense counsel.

10          Is there anything else we should put on the record

11  here today?

12          MR. SHERMAN:  Nothing from the government.

13          MS. WONG:  Nothing from the defense, Your Honor.

14          THE COURT:  I'll note, Mr. Limmer's wife has been

15  present in the courtroom for the plea.  Anything else?  We're

16  good.  Thank you.  Take care.

17              (Proceedings concluded at 4:55 p.m.)

18          - - - - - - - - - - - - - - - - - -

19          I certify that the foregoing is a correct transcript

20  from the record of proceedings in the above-entitled matter.

21

22  */S/ Nicole Sesta, RMR, CRR*
    *Court Reporter/Transcriber*

23

24  *March 5, 2024*
        *Date*

25